UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ERIC M. LONG,

        Plaintiff,

                                   Case No. 2:19-cv-5458
     v.                             Judge Sarah D. Morrison
                                   Chief Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

      Plaintiff, Eric M. Long, brings this action under 42 U.S.C. § 405(g) for review of a final

decision of the Commissioner of Social Security ("Commissioner") denying his application for

disability insurance benefits. This matter is before the United States Magistrate Judge for a

Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 12), the

Commissioner's Memorandum in Opposition (ECF No. 17), and the administrative record (ECF

No. 9). Plaintiff did not file a Reply. For the reasons that follow, it is **RECOMMENDED** that

Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be

**AFFIRMED**.

### I.    BACKGROUND

      On May 27, 2015, Plaintiff filed his application for disability insurance benefits, alleging

that he had been disabled since June 5, 2014. (R. at 329-335.) Plaintiff's application was denied

initially and upon reconsideration. (R. at 227-235; 237-43.) Plaintiff sought a *de novo* hearing

before an administrative law judge. (R. at 244-245.) Administrative Law Judge ("ALJ") Jason

C. Earnhart held a hearing on May 3, 2018, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 98-143.) On August 1, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 59-90.) On October 15, 2019, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1–7.) Plaintiff then timely commenced the instant action.

## II. RELEVANT HEARING TESTIMONY

Plaintiff testified that he lived with his parents, his fiancée, and his fiancee's pregnant, 14-year old daughter. (R. 103, 104-105.) He further testified that after his alleged onset date, and in approximately 2015 and 2016, he worked briefly at Highlands Golf Course, Harry & David, and the Golf Depot. (R. at 106-108.) He explained that he was fired from his job at the golf course, left the job at Harry & David because he contracted impetigo due to his weakened immune system, and was laid off from Golf Depot after he developed an abscess that he had removed. (R. at 105, 107, 108.) At that time, Plaintiff stated that he received Remicade infusions every seven weeks for his Crohn's disease, but the Remicade did not help that particular abscess. (R. at 109.) In 2015, he was taking classes at Columbus State Community College, majoring in real estate and carrying a 30-hour course load. (R. at 110.) His GPA was 3.9. (*Id*.) Plaintiff further testified that he previously had worked for seven years at JP Morgan Chase, most recently as a product specialist. (R. at 112.) That job involved sitting and lifting up to 30 pounds. (R. at 112-113.)

Plaintiff explained that he had started drinking at age 13 but stopped in 2016 when he was 32. (R. at 114.) He stopped going to Columbus State in 2015 after being incarcerated in connection with a DUI. (R. at 115.) He went to jail two more times after testing positive for

marijuana.  (R. at 117.)  His last incarceration was in 2017.  (R. at 119, 120.)  He currently uses marijuana products to help with his Crohn's symptoms.  (R. at 118.)

In response to the ALJ's questioning as to why he thought he had been unable to maintain employment since his alleged onset date, Plaintiff stated that he was considering having back surgery and had begun physical therapy.  (R. at 121.)  He explained that he has several herniated discs, a torn disc, arthritis, and scoliosis.  (*Id*.)  His back pain exacerbates his Crohn's symptoms. (*Id*.)  He further explained that it is difficult for him to work because he either has too many medical appointments, will have stomach or back issues, and suffers from depression, anxiety, and PTSD.  (R. at 122.)  He further cited his need for frequent bathroom breaks and his weakened immune system as other bases for his inability to work.  (R. at 123.)  He stated that he would like to work as a real estate appraiser but was advised not to look for work while his disability application was pending.  (R. at 123, 124.)  His driver's license remains suspended. (R. at 125.)

In response to questioning from his attorney, Plaintiff stated that he lost his job at Chase because of his need for frequent bathroom breaks.  (R. at 125.)  He explained that during a 10-hour shift, he may require 5 or 6 breaks to use the restroom.  (*Id*.) He further explained that, in the years since he had been fired by Chase, his Crohn's disease had been up and down but over the last couple of years, his doctor had stopped listening to him.  (R. at 126.)  He described his then-current Crohn's symptoms as severe abdominal cramping requiring him to use the restroom anywhere from six to ten to twelve times a day. (R. at 127.)   In response to the ALJ's request for clarification, however, Plaintiff confirmed that this situation only occurred when his symptoms were really bad.  (*Id*.)  Plaintiff stated that he was several years past the expected efficacy of Remicade.  (R. at 128.)

3

With respect to his mental health issues, Plaintiff testified that he gets along well with his fiancée and her children. (R. at 132.)  He stated that they seldom go out to dinner or the movies but tend to stay in the basement of his parents' house. (R. at 133.)  He has problems with crying and does not get dressed every day. (*Id.*)  He has tried ten different medications to address his mental health issues and does not know what else to do. (R.at 133.)  He understands that returning to alcohol is not an option. (*Id.*)  In continued questioning by his attorney, Plaintiff testified that he did not believe there was any time since he lost his job at Chase that he would have been able to work full-time. (*Id.*)

### III.   RELEVANT MEDICAL RECORDS

#### A.  Dr. Jeffrey S. Sams

Plaintiff began treating with Dr. Sams in 2008 for gastrointestinal issues.  In office notes dated June 22, 2017, Dr. Sams summarized Plaintiff's treatment history as follows:

> Eric returns today for routine follow-up, a six-month checkup. His last visit was in December. At that time things were going quite well. He has been reincarcerated, anticipates returning home at the end of July. He is furloughed for his Remicade Infusions and for physician visits. By brief history, he was a new patient to me in May of 2008 when he presented with 15 bowel movements per day and crampy abdominal pain and a 30-pound weight loss. He underwent colonoscopy and CT enlerography. He had evidence of colitis & perianal fistula. He was started on sulfasalazine, to which prednisone was subsequently added along with Flagyl. He had the abscess drained by Dr. Kerner in June of 2008 with placement of a seton. Due to a flare of disease on tapering prednisone he was switched to Remicade in August 2008. In April of 2012 he had a mild flare, with symptoms developing in the week prior to his next Remicade infusion. Colonoscopy showed no involvement in the terminal ileum and right or transverse colons, but mild colitis in the left colon with patchy erythema and a couple of tiny ulcers. We adjusted his Remicade at that point to every seven weeks, and he has been on that thereafter, the last five years. He's been on Remicade a total of nine years. He has recently seen some blood on the outside of stool and on wiping. He was referred to see Dr. Peter Lee, a colleague Dr. Kerner, who is off on medical leave. He did not have all of Eric's records, but performed either anoscopy or sigmoidoscopy in the office, and the patient believes the findings were benign, possibly just hemorrhoidal bleeding. I do not have confirmation of this. He reports they discussed possible flap advancement technique for more definitive management of the fistula but there was concern

about disease activity which may warrant further action on my part. He is otherwise feeling quite well and having no issues apart from the minor bleeding. There is no drainage at the seton or induration et cetera.

(R. at 1016.)

On June 10, 2018, Dr. Sams wrote the following letter, restated here verbatim:

Re: Long, Eric

To Whom It May Concern:

Mr. Eric Long is a long-standing patient of mine with inflammatory bowel disease. He has requested this letter, which is to be communicated to current or future employers. As a patient with inflammatory bowel disease, he may require frequent and/or immediate access to toilet facilities in the work place. I would request on his behalf that this accommodation be afforded him in his employment.

(R. at 1125.)

**B. State Agency Psychologists**

Plaintiff raises an issue only with respect to the opinion of Dr. Tonnie Hoyle, the state agency consultant at the reconsideration level. Dr. Hoyle completed a Mental Residual Functional Capacity Assessment on December 11, 2015. (R. at 220-222.) Her assessment reveals the Plaintiff's memory and cognition were intact but that he had sustained concentration and persistence limitations. (R. at 220.) She explained that Plaintiff appeared cooperative with the interview, he described his mood as okay, his affect was mildly dysphoric without lability and that he was able to maintain attention to perform simple routine tasks and make simple decisions. (R. at 221.) She opined that he was moderately limited in the ability to interact appropriately with the general public. (*Id.*) To support this opinion, she explained that Plaintiff reported spending most of his time in the basement watching TV and that he stated that he is anxious around people, so he tries to seclude himself. (*Id.*) She further noted that Plaintiff lived with his parents and his mother does the shopping but that he can do errands and household

chores. (*Id.*) In Dr. Hoyle's view, Plaintiff would perform optimally in a setting that requires minimal interaction and can relate adequately on a superficial basis. (*Id.*)

## IV.    ADMINISTRATIVE DECISION

On August 1, 2018, the ALJ issued his decision. (R. at 59-90.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since his alleged onset date of June 5, 2014. (R. at 64.)

At step two, the ALJ concluded that Plaintiff had the following severe impairments: Crohn's disease, gastroesophageal reflux disease ("GERD"), degenerative changes of the lumbar spine, obesity, and depressive, anxiety, trauma- and stressor-related, and substance abuse disorders. (R. at 64.)

At step three of the sequential process, the ALJ concluded that that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18-19.) At step

four, the ALJ assessed Plaintiff's RFC as follows:

> After careful consideration of the entire record, it is determined that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Balancing, climbing ramps and stairs, crawling, crouching, kneeling, and stooping, are each limited to no more than frequently. Climbing ladders, ropes, and scaffolds, is limited to no more than occasionally. He must avoid all exposure to unprotected heights. Mentally, the claimant retains the capacity to perform simple routine tasks, detailed tasks, and moderately complex tasks, with no fast production pace.

(R. at 72.)

In reaching this determination, the ALJ accorded "little" weight to Dr. Sams' opinion in

assessing Plaintiff's physical functional limitations and restrictions as of the alleged onset date.

(R. at 78.) Further, he assigned overall "partial" weight to reviewing psychologists' opinions in

assessing Plaintiff's mental functional limitations and restrictions as of the alleged onset date. (R.

at 79.)

Relying on the VE's testimony, the ALJ determined that Plaintiff could perform his past

relevant work as a mailing machine operator as generally performed in the national economy,

which does not require the performance of work-related mental and physical activities precluded

by his residual functional capacity. (R. at 80.) Further, based upon the VE's testimony and the

totality of the evidence, and considering the Plaintiff's age, education, work experience, and

residual functional capacity, the ALJ determined that Plaintiff is capable of making a

successful adjustment to other work that exists in significant numbers in the national economy as

of the alleged onset date of disability. (R. at 83.) Accordingly, the ALJ determined that Plaintiff

was not disabled under the Social Security Act. (R. at 82, 83.)

## V.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.    ANALYSIS

Plaintiff advances two contentions of error.  First, Plaintiff asserts that the ALJ improperly discredited the opinions of Dr. Sams, his treating gastroenterologist.  Further, Plaintiff contends that the ALJ failed to properly account for the opinions provided by the State agency psychological consultants.  In connection with both of these contentions, Plaintiff appears also to assert that the ALJ's failure to properly account for these opinions resulted in the formulation of an RFC that is not supported by substantial evidence.   The Undersigned considers each issue in turn below.

### A.    Treating Physician Rule – Good Reasons Requirement

Plaintiff argues that the ALJ failed to give good reasons for discounting the opinion of Dr. Sams, his treating physician.  This opinion, as set forth in Dr. Sams' letter of June 10, 2018, stated that Plaintiff "may require frequent and/or immediate access to toilet facilities in the work place."  (R. at 1125.)   The Undersigned disagrees that the ALJ erred in his consideration of Dr. Sams' opinion.  Rather, the ALJ properly discounted Dr. Sams' opinion and his reasons for doing so are supported by substantial evidence.

In evaluating a claimant's case, the ALJ must consider all medical opinions that he receives.  20 C.F.R. § 416.927(c).  Medical opinions include any "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).  Here, there is no dispute that Dr. Sams is Plaintiff's treating physician.

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal

picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone ..." 20 C.F.R. § 416.927(c)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 408.[2] If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.* Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some

10

> reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

In this case, the ALJ considered Dr. Sams' opinions,[2] but assigned them "little weight," reasoning as follows:

> The opinions of the claimant's treating gastroenterologist are entitled to little weight in assessing the claimant's physical functional limitations and restrictions as of the alleged onset date of disability (Exhibit 24F). As noted above, in light of the claimant's Crohn's disease and alleged symptoms, additional limitations and restrictions with regard to exposure to unprotected heights were assessed. However, there is no evidence documenting greater physical functional limitations and restrictions than set forth above due to the claimant's Crohn's disease and related symptoms. These opinions are inconsistent with the totality of the evidence, as

---

[2] Although the ALJ refers to "opinions," Plaintiff's contention of error relates only to Dr. Sams' letter dated June 10, 2018, identified by the ALJ as Exhibit 24F. (R. at 1125.)

discussed above, which documents that the claimant denied and did not demonstrate chronic edema (Exhibits 2F/7 and 10, 4F/148 and 155, and 23F/8). These opinions are inconsistent with the totality of the evidence, as discussed above, which documents that the claimant repeatedly had negative and normal musculoskeletal and neurological findings, with intact and normal cranial nerves and sensory (Exhibits lF/5, 7, and 10, 4F/148, 13F/2, 5, 8, 11, and 14, and 23F/7). These opinions are inconsistent with the totality of the evidence, as discussed above, which documents that the claimant was repeatedly ambulatory with normal gait and station, and no ambulatory aid usage noted (Exhibits 4F/148, 158, 164, 172, 183, and 190, 8F/2, 6, 12, 15, 19, 21, 23, 27, 31, 33, 35, 37, 41, and 43, 12F/1, 14F/5 and 21, 17F/3, 23F/3 and 18, and 4E). These opinions are inconsistent with the totality of the evidence, as discussed above, which documents that the claimant's Crohn's disease and related symptoms are generally in remission, and he repeatedly endorsed doing well with few and intermittent flares (Exhibits 2F/6-7, 9, and 16-17, 6F/3, 7, 12, and 17, 7F/4, 13F/1, 4, 10, and 13, and 16F/4). These opinions are inconsistent with the totality of the evidence, as discussed above, which documents that the claimant experiences only intermittent bleeding, and he denied and did not demonstrate abscess and weight loss at different times (Exhibits 13F/13, and 16F/4 and 10). These opinions are inconsistent with the totality of the evidence, as discussed above, which documents that the claimant reported that his Crohn's disease is asymptomatic other than his abscess on one occasion (Exhibit 2F/7). These opinions are inconsistent with the totality of the evidence, as discussed above, which documents that the claimant endorsed only two to three stools a day on one occasion (Exhibit 13F/13). These opinions are inconsistent with the totality of the evidence, as discussed above, which documents that the claimant does not have low hemoglobin and serum albumin levels (Exhibits 4F/l 58-159, and 14/1, 10, 13, and 15). These opinions are inconsistent with the totality of the evidence, as discussed above, which documents non-compliance with prescribed treatment for the claimant's Crohn's disease and related symptoms (Exhibits 2F/7-8, and 13-14), which would not be expected if this condition and related symptoms are as severe as he alleges as of the alleged onset date of disability. These opinions are inconsistent with the totality of the evidence, as discussed above, which documents that the claimant is admittedly able to carry and lift in excess of the requirements of light work (Exhibit 4E). These opinions are inconsistent with the totality of the evidence, as discussed above, which documents that the claimant is admittedly able to stand for up to 60 minutes, and walk for up to two miles at a time (Exhibit 4E). These opinions are inconsistent with the totality of the evidence, as discussed above, which documents that the claimant exercises multiple times a week and he reported joining a gym on one occasion (Exhibits 2F/9, SF/8, and 17F/2). These opinions are inconsistent with the totality of the evidence, as discussed above, which documents chronic daily cigarette smoking AMA, as discussed above (Exhibits 2F/6, 4F/147, SF/4, 6F/1, and 7F/1), which would not he expected if the claimant's Crohn's disease and related symptoms are as severe as he alleges as of the alleged onset date of disability. This evidence does not reasonably support further restriction in the claimant's residual functional capacity and could support a determination that he is less physically limited than set forth above as of the alleged

onset date of disability. Accordingly, the opinions of the claimant's treating gastroenterologist are entitled to little weight in assessing the claimant's physical functional limitations and restrictions as of the alleged onset date of disability.

(R. at 77-78.)

As the above excerpt indicates, the ALJ considered the evidence regarding Plaintiff's Crohn's disease in some detail.  His decision to discount Dr. Sams' opinion in assessing Plaintiff's functional limitations and restrictions is supported by substantial evidence. For example, the record indicates that Plaintiff's condition was in remission. (R. at 630.) Further, the record reveals that Plaintiff was doing well with only intermittent flareups.  (*See, e.g.,* R. at 879, 884, 899).   Additionally, the ALJ properly discounted the opinion because Plaintiff was not always compliant with his prescribed treatment and was a chronic daily cigarette smoker.  (*See, e.g.,* R. at 628.)  Moreover, 2017 office treatment notes from Dr. Lee confirm the intermittent nature of Plaintiff's symptoms.  (R. at 1061.)  Office treatment notes from Dr. Yoder dated December 16, 2017, also support the ALJ's analysis, indicating Plaintiff's report of intermittent Crohn's flareups.  (R. at 146.)  The ALJ properly discounted Dr. Sams' opinion for all of these reasons.  Because the ALJ explained his decision to give little weight to Dr. Sams' opinion, including highlighting the evidence that did not support significant limitations, the ALJ's findings were supported by substantial evidence.  *See Combs v. Comm'r of Soc. Sec.,* 459 F.3d 640, 652 (6th Cir. 2006) (stating that "this court has consistently stated that the Secretary is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence"); 20 C.F.R. §§ 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.")

Beyond the medical evidence of record, the ALJ also reasonably considered Plaintiff's activities and found them to be inconsistent with additional limitations beyond those set forth in the RFC. Specifically, the ALJ noted Plaintiff's ability to stand for 60 minutes, walk up to two miles at a time, and exercise. (R. at 563, 630, 638, 849.) Daily activities such as those reported by Plaintiff can constitute substantial evidence in support of a non-disability finding. *Dyer v. Social Sec. Admin.*, 568 F. App'x 422, 427 (6th Cir. 2014) (citing *Tyra v. Sec'y of Health & Human Servs.,* 896 F.2d 1024, 1030 (6th Cir. 1990)).

Plaintiff does not dispute the accuracy of the ALJ's discussion of the record as set forth above. Moreover, Plaintiff concedes that the record contains evidence of improvement in his Crohn's diseases as a result of the Remicade infusions. (ECF No. 12, at p. 8.) Plaintiff also contends, however, that the ALJ's discussion relied on more outdated medical information rather than more recent treatment evidence demonstrating his ongoing gastrointestinal issues. Plaintiff cites specifically to Dr. Sams' notes from a routine follow up appointment on March 7, 2018. (R. at 1013.) Plaintiff's argument on this point is simply incorrect. First, the ALJ did consider these particular treatment notes. (*see, e.g.*, R. at 73, 74, 76, 77.) Further, Plaintiff fails to acknowledge that these notes plainly reflect that the gastrointestinal issue (fistula activity)" ha[d] settled down and is not giving [Plaintiff] to[o] much trouble." Accordingly, Plaintiff has not demonstrated how these notes are inconsistent with the ALJ's discussion of the record as a whole such that they undermine the ALJ's reasoning here.

Moreover, in essence, Plaintiff is merely arguing that the ALJ considered only select evidence and should have weighed the evidence differently. However, it is "[a]dministrative law judges [who] are responsible for reviewing the evidence and making administrative findings of fact and conclusions of law[.]" 20 C.F.R. § 404.1513a(b); *see also Schmiedebusch v. Comm'r of*

*Soc. Sec*, 536 F. App'x 637, 649 (6th Cir. 2013).  To the extent that Plaintiff accuses the ALJ of "cherry picking" evidence, such an allegation "is seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin*., 748 F.3d 723, 726 (6th Cir. 2014); s*ee also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.").

In sum, the ALJ applied the correct legal criteria and substantial evidence supports his detailed reasons for discounting Dr. Sams' opinion.  *Stiltner v. Comm'r of Soc. Sec*., 244 F. App'x 685, 690 (6th Cir. 2007) ("The ALJ did not summarily dismiss [treating physician's] opinion.  Rather, the ALJ detailed at substantial length why he found it lacking compared with the other evidence.  This is all that we require when reviewing an administrative law judge's decision for compliance with 20 C.F.R. § 404.1527(d)(2)'s reasons-giving requirement.").  Accordingly, Plaintiff's contention of error on this issue is without merit.

### B. State Agency Consultant Opinions

Plaintiff also faults the manner in which the ALJ evaluated the opinion of state agency psychologist Tonnie Hoyle Psy.D.  Plaintiff appears to take issue only with the portion of the ALJ's analysis addressing Dr. Hoyle's opinion that he is limited to "only simple routine tasks" with limited social interactions. (ECF No. 12, at p. 11, PAGEID # 1185.)[3]  The Undersigned disagrees and finds that the ALJ properly discounted this opinion.

An ALJ "must explain in the decision the weight given the opinions of a State Agency medical '. . . consultant[,]" 20 C.F.R. § 404.2527(e)(2)(ii), but need not give "an exhaustive

---

[3]Although Plaintiff does not make this particularly clear, it appears that the portion of the ALJ's decision at issue here cites to Ex. 4A, Dr. Hoyle's opinion issued on reconsideration (R. at 221.)

factor-by-factor analysis" of her or his decision. *Cf. Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) (citations omitted). Further, although "an opinion from a medical source who has examined a claimant is [generally] given more weight than that from a source who has not performed an examination," ALJs have more discretion in considering non-treating source opinions. *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 375 (6th Cir. 2013). Significantly, ALJs are not required to give "good reasons" for discounting non-treating source opinions. *See Martin v. Comm'r of Soc. Sec.*, 658 F. App'x 255, 259 (6th Cir. 2016).

The ALJ considered the opinions of both state agency psychologists, Carolyn Goodrich and Tonnie Hoyle, together. In doing so, he accorded them "partial" weight overall, reasoning as follows:

> In assessing the claimant's mental functional limitations and restrictions, the opinions of the BDD reviewing psychologist upon reconsideration are entitled to partial weight (Exhibit 4A/5and 9-11). The opinions that the claimant is limited to performing simple routine tasks with social interaction limitations are inconsistent with the totality of the evidence, including the claimant's education, enrollment in community college courses with 3.9 GPA, presentation at different times, activities involving significant understanding, remembering, and applying information, and interacting with others, and the absence of IQ scores and school records documenting impaired intellectual functioning, as discussed above. This evidence does not reasonably justify the imposition of limitations to performing simple routine tasks and interacting with others, and these opinions are entitled to little weight to that extent. However, the remainder of these opinions is consistent with the totality of the evidence, as discussed above, and entitled to significant weight to that extent. These opinions are consistent with the totality of the evidence, including the "paragraph B" criteria, as discussed above, which documents no more than moderate limitations in concentrating, persisting, or maintaining pace, and could support determinations that the claimant is less limited in these areas. These opinions are consistent with the totality of the evidence, as discussed above, which documents that the claimant repeatedly had normal mental status examinations with insignificant, intermittent, manageable, stable, and well controlled anxiety and depression, and endorsed improved mood (Exhibits lF/5, 5F/4 and 8, 6F/3, 7, 12, 23, and 27, 14F/21, 17F/4, and 23F/5 and 7). These opinions are consistent with the totality of the evidence, as discussed above, which documents chronic non-compliance with prescribed medication (Exhibits *SF/3-4,* and 6F/3 and 22), which would not be expected if the claimant's mental impairments and related symptoms are as severe as he alleges as of the alleged onset date of disability. These opinions

are consistent with the totality of the evidence, as discussed above, which documents that the claimant's alleged mental symptoms are concurrent with Axis IV and other acute and chronic situational stressors including legal probation as of the alleged onset date of disability (Exhibits 5F/4, 8, 12, 17, 21,and 26, 6F/3, 7-8, 12-13, 17, 23, and 27, and 7F/4). These opinions are consistent with the claimant's education, enrollment in community college classes with 3.9 GPA, activities involving significant understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself, presentation at different times, and the absence of IQ scores and school records documenting impaired intellectual functioning, as discussed above. These opinions are consistent with a significant number of Global Assessment of Functioning ("GAF") determinations documenting no more than moderate limitations of adaptive, occupational, and social functioning (Exhibits 5F/6 and 9, 6F/1, 5, 8, 11, 13, 15, 20, and 23, and 7F/4), which are generally consistent with the totality of the evidence, as discussed above, and entitled to partial weight. This evidence does not reasonably justify greater reduction of the claimant's mental residual functional capacity, and could support a determination that he is less mentally limited than set forth above as of the alleged onset date of disability, as the BDD reviewing psychologist initially opined (Exhibit 2A/7 and 11-13), which are generally consistent with the totality of the evidence, as discussed above, and entitled to partial weight. These opinions are consistent with the totality of the evidence and not contradicted, as no acceptable medical source within the meaning of the Regulations opined as to the existence of additional or greater mental functional limitations and restrictions as of the alleged onset date of disability. The evidence received into the record after these assessments concerning the claimant's mental status did not otherwise provide any credible or objectively supported new and material information that would alter these findings concerning his mental functional limitations and restrictions as of the alleged onset date of disability. Accordingly, the opinions of the BDD reviewing psychologists are overall entitled to partial weight in assessing the claimant's mental functional limitations and restrictions as of the alleged onset date of disability.

(R. at 78-79.)

Plaintiff contends that the ALJ erred by citing the lack of IQ scores and school records as a basis for discounting Dr. Hoyle's opinion. This argument, however, completely ignores the balance of the ALJ's detailed reasoning on this point. For example, the ALJ reasonably relied on Plaintiff's enrollment in community college, his 3.9 GPA, and his various activities involving understanding, remembering, and applying information. The ALJ specifically discussed Plaintiff's relevant activities at some length elsewhere in his opinion. (R. at 68 citing *e.g*. R. at

845, 847, 849, 853,857, 859, 861, 863,866, 870, 875, 880, 885, 890 and the hearing testimony.)
In his discussion, the ALJ explained that Plaintiff performs grooming, hygiene, and self-care
activities such as dressing and showering independently; repeatedly presented with appropriate,
casual, and good dress and grooming; was capable of performing household chores and cleaning,
including yardwork and running errands; exercised multiple times a week and reported joining a
gym on one occasion; enjoyed watching television; used electronic mail, social networking sites
such as Facebook, and telephones independently; and reported working at different times since
the alleged onset date of disability. (*Id.*) The ALJ also noted that Plaintiff understood and
followed the hearing proceedings without difficulty and appropriately responded to questions.
(*Id.*) Significantly, Plaintiff does not dispute the ALJ's lengthy recitation of his daily activities.
Taking all of the above into account, the ALJ properly afforded only partial weight to this
opinion and the decision is supported by substantial evidence.

### C. RFC

Finally, Plaintiff contends that the ALJ erred in formulating an RFC that did not include
limitations as to restroom breaks as opined by Dr. Sams or social functioning limitations as
articulated by Dr. Hoyle. Again, the Undersigned disagrees and finds that the ALJ's RFC
determination is supported by substantial evidence.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and
mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x
149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of
RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e).
Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v.
Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). When

considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'"  *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted).

An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

Plaintiff bears the burden of providing the necessary medical evidence to demonstrate his impairments cause functional limitations resulting in disability.  20 C.F.R. §404.1512(c).  Where the ALJ has properly considered Plaintiff's evidence and substantial evidence supports the ALJ's conclusion, "this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005.)

For the reasons previously discussed, substantial evidence supports the ALJ's assessments and the Court must defer to them.  *Longworth*, 402 F.3d at 595.  While Plaintiff may have preferred a different RFC than the one determined by the ALJ, the ALJ thoroughly

explained the bases for his determination, which enjoys substantial support in the record. *Schmiedebusch*, 536 F. App'x at 649; *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) ("The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.").

Moreover, the fact that the ALJ did not incorporate the specific social interaction restrictions noted by Dr. Hoyle is not legal error in and of itself. *White v. Comm'r of Soc. Sec.*, 970 F. Supp. 2d 733, 753 (N.D. Ohio Sept. 10, 2013) (noting that the ALJ's decision not to incorporate all of the State agency examining physician's restrictions, despite attributing significant weight to his opinion, was "not legal error in and of itself"). "While an ALJ must consider and weigh medical opinions, the RFC determination is expressly reserved to the Commissioner." *Id.* (citing *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 198 (6th Cir. 2004)). Indeed, "there is no legal requirement for an ALJ to explain each limitation or restriction he [or she] adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given significant weight." *Smith v. Comm'r of Soc. Sec.*, No. 5:11-cv-2104, 2013 WL 1150133, at *11 (N.D. Ohio March 19, 2013) (citing *Ford*, 114 F. App'x at 198).  An ALJ simply is not required to include restrictions in the RFC that the ALJ did not accept. *See Hall v. Comm'r of Soc. Sec.*, No. 1:17-CV-363, 2018 WL 3524467, at *4 (S.D. Ohio July 23, 2018), *report and recommendation adopted*, No. 1:17-CV-363, 2018 WL 4031060 (S.D. Ohio Aug. 23, 2018) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

## VII.   CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Based on the foregoing, it is

therefore **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## VIII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816*,* 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted).

Date:  December 16, 2020                    s/ *Elizabeth A. Preston Deavers* _____
                                          ELIZABETH A. PRESTON DEAVERS
                                          CHIEF UNITED STATES MAGISTRATE JUDGE