UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ERIC M. LONG,**

   **Plaintiff,**

            :

 v.           **Case No. 2:19-cv-5458**
             **Judge Sarah D. Morrison**
             **Chief Magistrate Judge Elizabeth**
**COMMISSIONER OF**     **A. Preston Deavers**
**SOCIAL SECURITY,**

            :

   **Defendant.**

## OPINION AND ORDER

Eric M. Long ("Plaintiff") brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security disability insurance benefits. Plaintiff filed his Statement of Errors on May 13, 2020. (Statement of Errors, ECF No. 12.) The Commissioner filed a Memorandum in Opposition. (Mem. in Opp'n, ECF No. 17.) Plaintiff did not reply. On December 16, 2020, Chief Magistrate Judge Deavers issued a Report and Recommendation, recommending that the Court overrule Plaintiff's Statement of Errors and affirm the Commissioner's denial of benefits. (R&R, ECF No. 18.) Plaintiff timely filed his Objection to the Magistrate Judge's Report and Recommendation (Obj., ECF No. 19) and the Commissioner filed a Response (Resp., ECF No. 20). For the reasons set forth below, the Court

**OVERRULES** Plaintiff's Objection, **ADOPTS** the Magistrate Judge's Report and Recommendation, and **AFFIRMS** the Commissioner's decision.

**I.     BACKGROUND**

   **A.     Procedural History**

In mid-2015, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act (the "Act"). (Admin. Record ("R."), 329–30, ECF No. 9.) Plaintiff's application was denied initially and upon reconsideration. (*Id.* at 95, 211.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 244.) ALJ Jason C. Earnhart conducted a hearing at which Plaintiff, represented by counsel, appeared and testified. (*Id.* at 98–143.) Vocational expert Eric W. Pruitt (the "VE") also appeared and testified at the hearing. (*Id.*) On August 1, 2018, the ALJ issued a decision finding that Plaintiff was not disabled under the Act. (*Id.* at 59–90.) The Appeals Council denied Plaintiff's request for review. (*Id.* at 1–7.) Plaintiff timely commenced the instant action. (ECF No. 1.)

   **B.     Relevant Record Evidence**

The record evidence relevant to Plaintiff's Objection is summarized below.

      **1.     Plaintiff's Hearing Testimony**

Plaintiff testified before the ALJ that his problems include Crohn's disease and related symptoms. (R. at 109.) He stated that he receives Remicade every seven weeks for his Crohn's disease, and uses medical marijuana. (Id. at 109, 118.) Although the medical marijuana helps, Plaintiff believes that the Remicade has lost its efficacy after ten years of treatment. (*Id.* at 118.) Plaintiff further testified that his Crohn's disease has been "up [and] down" in recent years. (*Id.* at 126.) His

2

symptoms can include severe abdominal cramping, a need to use the restroom up to twelve times a day (though only to that degree "[w]hen it's really bad"), nausea, bloody stool, and diarrhea. (*Id.* at 127–28.)

In response to the ALJ's questioning, Plaintiff testified that he cannot work, in part, due to back pain which exacerbates his Crohn's, and the need for frequent restroom breaks and medical appointments. (*Id.* at 121–122.) Plaintiff went on to testify that he was terminated from a previous long-term employer because he required five to six restroom breaks in a ten-hour shift. (*Id.* at 125.) Plaintiff testified that he sued that employer after being terminated, and "won." (*Id.* at 126.) Although he indicated that Crohn's disease is the biggest reason why he is unable to work, Plaintiff explained in follow-up that he doesn't believe many employers will be interested in hiring him "when they [see] [he] sued [his] former employer." (*Id.* at 129.)

### 2. Treating Gastroenterologist Jeffrey S. Sams, M.D.

Plaintiff has been a patient of Jeffrey S. Sams, M.D. since May of 2008. (*See id.* at 1014.) Dr. Sams, a gastroenterologist, has treated Plaintiff principally for Crohn's disease.[1]

Treatment notes from a June 24, 2014 visit to Dr. Sams reflect that Plaintiff "is doing well with his Crohn's by and large. The only issue he's really had is a

---

[1] "Crohn's disease is a type of inflammatory bowel disease (IBD). It causes inflammation of your digestive tract, which can lead to abdominal pain, severe diarrhea, fatigue, weight loss and malnutrition. . . . While there's no known cure for Crohn's disease, therapies can greatly reduce its signs and symptoms and even bring about long-term remission and healing of inflammation." *Crohn's disease*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/crohns-disease/symptoms-causes/syc-20353304 (last visited Jan. 21, 2021).

perirectal abscess in early June which required drainage as an outpatient in Dr. Kerner's office. . . . He is on Remicade for his Crohn's taking infusions every seven weeks. . . . He has no other symptomatology. I recommended he discontinue smoking for the beneficial effect that may have on his Crohn's. We also talked about his obesity." (*Id*. at 627.) Dr. Sams went on to note that Plaintiff exhibited "relative noncompliance in terms of missing appointments" but that Plaintiff seemed "very responsive and contrite about the issue[.]" (*Id*. at 628.) Nonetheless, Plaintiff was a no-show at his appointment scheduled for December 30, 2014. (*Id*. at 629.)

Dr. Sams noted after a March 5, 2015 visit that Plaintiff "is doing well currently. His Crohn's is in remission." (*Id*. at 630.) After missing his May 2015 Remicade infusion, Plaintiff experienced a flare-up of his Crohn's. He called Dr. Sams's office and reported experiencing symptoms, for which Dr. Sams prescribed a steroid course. (*Id*. at 634–35.)

At Plaintiff's next visit on September 3, 2015, Dr. Sams noted that Plaintiff was "doing quite well at this point. . . . Unfortunately, however, he is back to smoking regular cigarettes." (*Id*. at 1022.) He further noted that Plaintiff's "Crohn's disease appears to be back in remission after reinstituting Remicade therapy as a solo agent." (*Id*. at 2023.)

On March 3, 2016, Plaintiff again visited Dr. Sams for a routine follow-up. (*Id*. at 1025.) Dr. Sams noted that Plaintiff "has been doing well. His stool frequency is two or three movements per day and he [has] been feeling fine." (*Id*.)

4

Plaintiff returned to Dr. Sams for a December 22, 2016 follow-up visit. Dr. Sams noted that Plaintiffs' "bowel habits are regular and he denies abdominal pain or changes in bowel habits et cetera." (*Id.* at 1019.) Dr. Sams ordered maintenance of current therapy and a six-month follow-up. (*Id.* at 1020.)

At a June 22, 2017 routine follow-up visit, Dr. Sams summarized Plaintiff's treatment history:

> His last visit was in December. At that time things were going quite well. He has been reincarcerated, anticipates returning home at the end of July. He is furloughed for his Remicade infusions and for physician visits. By brief history, he was a new patient to me in May of 2008 when he presented with 15 bowel movements per day and crampy abdominal pain and a 30-pound weight loss. He underwent colonoscopy and CT enlerography. He had evidence of colitis & perianal fistula. He was started on sulfasalazine, to which prednisone was subsequently added along with Flagyl. He had the abscess drained by Dr. Kerner in June of 2008 with placement of a seton. Due to a flare of disease on tapering prednisone he was switched to Remicade in August 2008. In April of 2012 he had a mild flare, with symptoms developing in the week prior to his next Remicade infusion. Colonoscopy showed no involvement in the terminal ileum and right or transverse colons, but mild colitis in the left colon with patchy erythema and a couple of tiny ulcers. We adjusted his Remicade at that point to every seven weeks, and he has been on that thereafter, the last five years. He's been on Remicade a total of nine years. He has recently seen some blood on the outside of stool and on wiping. He was referred to see Dr. Peter Lee, a colleague Dr. Kerner, who is off on medical leave. He did not have all of Eric's records, but performed either anoscopy or sigmoidoscopy in the office, and the patient believes the findings were benign, possibly just hemorrhoidal bleeding. I do not have confirmation of this. He reports they discussed possible flap advancement technique for more definitive management of the fistula but there was concern about disease activity which may warrant further action on my part. He is otherwise feeling quite well and having no issues apart from the minor bleeding. There is no drainage at the seton or induration et cetera.

(*Id.* at 1016.)

5

On March 7, 2018, Dr. Sams saw Plaintiff for a routine follow-up. (*Id.* at 1013.) He noted past concerns that the Remicade was no longer as efficacious, and that continued medications should continue to be monitored. (*Id.*) Dr. Sams further noted that Plaintiff complained of low back pain, but "it's not clear that this is sacroiliitis related to his IBD." (*Id.*)

On June 6, 2018, Plaintiff visited Dr. Sams for a three-month follow-up on colonic and perineal Crohn's. (*Id.* at 91–93.) Dr. Sams reviewed a colonoscopy performed two months prior, and noted that it "looked great, no visible disease activity." (*Id.* at 91.) Dr. Sams also noted that Plaintiff "requested a letter be sent to his attorney for the purposes of free access to the toilet facilities in the workplace." (*Id.*) Dr. Sams found the request to be "reasonable." (*Id.*) Dr. Sams noted that Plaintiff continued to smoke. (*Id.* at 92.) Finally, Dr. Sams made no changes to Plaintiff's treatment regimen and scheduled a six-month follow-up. (*Id.*)

On June 10, 2018, Dr. Sams signed a letter opinion stating:

Re: Long, Eric

To Whom It May Concern:

Mr. Eric Long is a long-standing patient of mine with inflammatory bowel disease. He has requested this letter, which is to be communicated to current or future employers. As a patient with inflammatory bowel disease, he may require frequent and/or immediate access to toilet facilities in the work place. I would request on his behalf that this accommodation be afforded him in his employment.

Sincerely,

Jeffrey S Sams, M.D.

(*Id.* at 1125.)

6

On December 6, 2018, Plaintiff visited Dr. Sams for a "routine 6-month follow-up visit regarding his perineal and colonic Crohn's." (*Id.* at 34.) That visit revealed that Plaintiff had some abdominal distress and intermittent diarrhea, but no issues in the perineal area. (*Id.*) Dr. Sams expressed intent to re-check in six months. (*Id.*)

### C. ALJ's Decision

The ALJ issued his decision on August 1, 2018. (*Id.* at 59–90.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 5, 2014 (the alleged onset date of Plaintiff's disability). (*Id.* at 64.) At step two, the ALJ found that Plaintiff has the following severe impairments: Crohn's disease, gastroesophageal reflux disease, degenerative changes of the lumbar spine, obesity, and depressive, anxiety, trauma- and stressor-related, and substance abuse disorders. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

7

medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 66.)

At step four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, it is determined that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Balancing, climbing ramps and stairs, crawling, crouching, kneeling, and stooping, are each limited to no more than frequently. Climbing ladders, ropes, and scaffolds, is limited to no more than occasionally. He must avoid all exposure to unprotected heights. Mentally, the claimant retains the capacity to perform simple routine tasks, detailed tasks, and moderately complex tasks, with no fast production pace.

(*Id.* at 72) (internal footnote omitted). In formulating the RFC, the ALJ considered Plaintiff's hearing testimony, medical treatment records, and medical opinions included in evidence, including that of Plaintiff's treating gastroenterologist, Dr. Sams. (*Id.* at 72–80.) The ALJ gave Dr. Sams's June 10, 2018 letter opinion "little weight," and explained as follows:

> The opinions of the claimant's treating gastroenterologist are entitled to little weight in assessing the claimant's physical functional limitations and restrictions as of the alleged onset date of disability. As noted above, in light of the claimant's Crohn's disease and alleged symptoms, additional limitations and restrictions with regard to exposure to unprotected heights were assessed. However, there is no evidence documenting greater physical functional limitations and restrictions than set forth above due to the claimant's Crohn's disease and related symptoms. These opinions are inconsistent with the totality of the evidence, as discussed above, which documents that the claimant denied and did not demonstrate chronic edema. These opinions are inconsistent with the totality of the evidence, as discussed above, which documents that the claimant repeatedly had negative and normal musculoskeletal and neurological findings, with intact and normal cranial nerves and sensory. These opinions are inconsistent with the totality of the evidence, as discussed above, which documents that the claimant was repeatedly ambulatory with normal gait and station, and no ambulatory

8

aid usage noted. These opinions are inconsistent with the totality of the evidence, as discussed above, which documents that the claimant's Crohn's disease and related symptoms are generally in remission, and he repeatedly endorsed doing well with few and intermittent flares. These opinions are inconsistent with the totality of the evidence, as discussed above, which documents that the claimant experiences only intermittent bleeding, and he denied and did not demonstrate abscess and weight loss at different times. These opinions are inconsistent with the totality of the evidence, as discussed above, which documents that the claimant reported that his Crohn's disease is asymptomatic other than his abscess on one occasion. These opinions are inconsistent with the totality of the evidence, as discussed above, which documents that the claimant endorsed only two to three stools a day on one occasion. These opinions are inconsistent with the totality of the evidence, as discussed above, which documents that the claimant does not have low hemoglobin and serum albumin levels. These opinions are inconsistent with the totality of the evidence, as discussed above, which documents non-compliance with prescribed treatment for the claimant's Crohn's disease and related symptoms, which would not be expected if this condition and related symptoms are as severe as he alleges as of the alleged onset date of disability. These opinions are inconsistent with the totality of the evidence, as discussed above, which documents that the claimant is admittedly able to carry and lift in excess of the requirements of light work. These opinions are inconsistent with the totality of the evidence, as discussed above, which documents that the claimant is admittedly able to stand for up to 60 minutes, and walk for up to two miles at a time. These opinions are inconsistent with the totality of the evidence, as discussed above, which documents that the claimant exercises multiple times a week and he reported joining a gym on one occasion. These opinions are inconsistent with the totality of the evidence, as discussed above, which documents chronic daily cigarette smoking AMA, as discussed above, which would not he expected if the claimant's Crohn's disease and related symptoms are as severe as he alleges as of the alleged onset date of disability. This evidence does not reasonably support further restriction in the claimant's residual functional capacity and could support a determination that he is less physically limited than set forth above as of the alleged onset date of disability. Accordingly, the opinions of the claimant's treating gastroenterologist are entitled to little weight in assessing the claimant's physical functional limitations and restrictions as of the alleged onset date of disability.

(R. at 77–78) (record citations omitted).

At step five of the sequential process, relying on the VE's testimony, the ALJ found that Plaintiff could perform his past relevant work as a mailing machine operator. (*Id.* at 80–82.) The ALJ further found that jobs exist in significant numbers in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. (*Id.* at 82–83.) The ALJ therefore concluded that Plaintiff was not disabled under the Act. (*Id.* at 84.)

## II. STANDARD OF REVIEW

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

## III. ANALYSIS

In his Statement of Errors, Plaintiff argued that the ALJ's decision should be reversed because the ALJ failed to properly evaluate the opinions of Plaintiff's treating gastroenterologist, Dr. Sams, and the State agency psychological

10

consultants. (*See generally*, Statement of Errors.) The Magistrate Judge recommended that the contentions of error be overruled, and the Commissioner's decision denying benefits be affirmed. (*See generally*, R&R.) Plaintiff now advances a single objection to the R&R: That the ALJ failed to properly evaluate Dr. Sams's June 10, 2018 letter opinion, and that the Magistrate Judge incorrectly concluded that the ALJ's decision to discount that opinion was supported by substantial evidence. (*See generally*, Obj.)

An ALJ must consider all medical opinions received in evaluating a claimant's case. 20 C.F.R. § 404.1527(c). Where a treating physician's opinion, like that of Dr. Sams, is submitted, the ALJ generally gives deference to it "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . . ." 20 C.F.R. § 404.1527(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). If the treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ's analysis must meet certain requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In such circumstance,

> an ALJ must apply certain factors–namely, the length of the treatment relationship and the frequency of examination, the nature and extent of

11

> the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source in determining what weight to give the opinion.

*Id.* Further, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s a] treating source's opinion." 20 C.F.R. § 404.1527(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of [a claimant's] impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

The Magistrate Judge found that the ALJ's decision to discount Dr. Sams's opinion was supported by substantial evidence, and that the ALJ provided the required "good reasons." The Magistrate Judge first noted that "the ALJ considered Dr. Sams's opinion[,] but assigned [it] 'little weight' . . ." (R&R, 11) (footnote omitted). Her Honor went to observe as follows:

12

> [T]he ALJ considered the evidence regarding Plaintiff's Crohn's disease is some detail. His decision to discount Dr. Sams' opinion in assessing Plaintiff's functional limitations and restrictions is supported by substantial evidence. For example, the record indicates that Plaintiff's condition was in remission. (R. at 630.) Further, the record reveals that Plaintiff was doing well with only intermittent flareups. (*See, e.g.*, R. at 879, 884, 899.) Additionally, the ALJ properly discounted the opinion because Plaintiff was not always compliant with his prescribed treatment and was a chronic daily cigarette smoker. (*See, e.g.*, R. at 628.) Moreover, 2017 office treatment notes from Dr. Lee confirm the intermittent nature of Plaintiff's symptoms. (R. at 1061.) Office treatment notes from Dr. Yoder dated December 16, 2017, also support the ALJ's analysis, indicating Plaintiff's report of intermittent Crohn's flareups. (R. at 146.) The ALJ properly discounted Dr. Sams' opinion for all of these reasons. Because the ALJ explained his decision to give little weight to Dr. Sams' opinion, including highlighting the evidence that did not support significant limitations, the ALJ's findings were supported by substantial evidence. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (["T]his court has consistently stated that the Secretary is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence[.]"); 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").
>
> Beyond the medical evidence of record, the ALJ also reasonably considered Plaintiff's activities and found them to be inconsistent with additional limitations beyond those set forth in the RFC. Specifically, the ALJ noted Plaintiff's ability to stand for 60 minutes, walk up to two miles at a time, and exercise. (R. at 563, 630, 638, 849.) Daily activities such as those reported by Plaintiff can constitute substantial evidence in support of a non-disability finding. *Dyer v. Soc. Sec. Admin.*, 568. F. App'x 422, 427 (6th Cir. 2014) (citing *Tyra v. Sec'y of Health and Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990)).

(*Id.*, 13–14.)

The Court agrees with the Magistrate Judge's analysis. Dr. Sams's opinion is entitled to deference only to the extent it is well-supported and consistent with the objective medical evidence. *See* 20 C.F.R. § 404.1527(c)(2). For all the reasons noted

13

by the Magistrate Judge, the ALJ properly found that Dr. Sams's opinion did not satisfy those requirements, and properly explained his reasoning.

Plaintiff's arguments for a ruling otherwise are unavailing. First, Plaintiff seems to argue that the fact that Dr. Sams's opinion was written *after* medical records reflecting improvement in Plaintiff's symptoms indicates a worsening in his condition, rendering reliance on the earlier-dated medical records improper. However, Plaintiff does not cite to any later-dated medical records or objective evidence supporting the notion that his condition had worsened. The unsupported assertion alone is insufficient to find that the ALJ's decision to discount Dr. Sams's opinion was not supported by substantial evidence.

Plaintiff next takes issue with the ALJ's reference to record evidence that Plaintiff believes "did not even have anything to do" with a need for restroom access. The Court disagrees. The ALJ clearly states his determination that Dr. Sams's opinion is entitled to little weight, that Plaintiff's Crohn's disease was adequately accounted for in the RFC, and that "there is no evidence documenting greater physical functional limitations and restrictions than set forth [in the RFC] due to [Plaintiff's] Crohn's disease and related symptoms." (R. at 77.) The ALJ goes on to recite evidence supporting the determination, which Plaintiff now attempts to discredit. However, all of the evidence cited in the ALJ's explanation bears directly on either (i) Dr. Sams's opinion (*i.e.*, the reasons why one might need frequent and/or immediate access to toilet facilities), or (ii) Plaintiff's ability to perform work-

14

related activities at the level set out in the RFC. None of that evidence undermines the ALJ's decision to discount Dr. Sams's opinion.

Accordingly, and as the Magistrate Judge correctly found, substantial evidence indeed supports the ALJ's decision—including medical records reflecting improvement in Crohn's symptoms and only intermittent flare-ups, and activities of daily living that suggest greater abilities than those opined by Dr. Sams. Plaintiff's objection is **OVERRULED**.

## IV. CONCLUSION

Based upon the foregoing, and pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, after a *de novo* determination of the record, this Court concludes that Plaintiff's objection to the Report and Recommendation of the Magistrate Judge is without merit. The Court, therefore, **OVERRULES** Plaintiff's Objection (ECF No. 19), **ADOPTS** the Magistrate Judge's Report and Recommendation (ECF No. 18), and **AFFIRMS** the Commissioner's decision.

The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Order and terminate this case from the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**